RALPH W. EMERSON, Administrator, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

**RAILROADS:** Negligence—Employees Injured While Passing Over Private Grounds. A railway company, under the Federal Employers' Liability Act, owes no duty to one of its employees during the time such employee is *unnecessarily and solely on his own motion* passing across private property (over which the railway company has *no* control), in order to reach the railway tracks, even though the railway company knows that its employees are in the habit of passing over such private property for such purpose. So held where a switchman, working on one track, attempted to pass over intervening private property, in order to reach other tracks of the company, and in so doing fell into a scalding vat on said private premises.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

APRIL 6, 1921.

REHEARING DENIED OCTOBER 1, 1921.

ACTION to recover damages for injuries resulting in the death of plaintiff's intestate. Suit was brought under the Federal Employers' Liability Act. The court directed a verdict in favor of the defendant. Plaintiff appeals.—*Affirmed.*

*Redmond & Stewart* and *M. P. Cahill,* for appellant.

*J. G. Gamble* and *Deacon, Good, Sargent & Spangler,* for appellee.

FAVILLE, J.—T. M. Sinclair & Company, Limited, is a corporation operating an extensive packing plant in the city of Cedar Rapids, Iowa. The following plat shows, in a general way, a portion of the grounds and buildings of said plant:

From the plat it appears that there are three railway tracks lying in a general southwesterly direction from the main buildings of the said packing plant, and also a series of tracks lying in a general northeasterly direction from said buildings. The evidence shows that the various roadways marked on said plat were graded, and were lighted by the various electric lights marked on the plat. The various tracks located throughout the yards of the packing company join in a main lead in a general northwesterly direction from the plant. The main entrance to the grounds of the packing company is on Third Street, and the roadway, after entering the grounds of the company, passes in a general easterly direction between two parks, the one on the north side of the roadway being designated as the "small park," and being triangular in shape. Between this latter park and the railway tracks is another roadway, running north and south. On the northeast side of the small park is also a roadway running in a northwesterly and southeasterly direction, and adjoining this roadway on the northeast are two large buildings, one a stable, and the other a cooper shop. An arc light is suspended at the corner of the stable, as shown on the plat. Near the northwest corner of the cooper shop, there was maintained by the packing company a soaking vat, placed in the ground for the purpose of soaking hoops that were placed upon barrels. The top of this vat was level with the ground, and it was without any cover or protection of any kind. The vat was 12 feet long, 4 feet wide, and 4 feet deep. The water in the vat was heated by steam pipes from the packing plant. At the time of the injury in question, appellant's intestate was employed as an extra switchman by the appellee, Chicago, Rock Island & Pacific Railway Company. He was what is known as a "field man," and his duties were to ride cars that were being switched on the various tracks, set the brakes, assist in coupling the cars, and perform the usual and necessary duties incident to the switching and placing of cars upon the different tracks in these yards. On the night in question, there were certain cars located on one of the tracks on the southwest side of the grounds of the packing company. This track is known as the "river track." Orders were given to switch certain of these cars and place them upon one of the tracks on the northeast side of the buildings. This

track is known as the "middle track." In performing this service, the switching crew coupled to a string of cars on the river track, and said cars were pulled out from that track on the main lead. Certain of these cars were cut off from this string and shoved easterly on the middle track. Others, that were to be returned to and pushed on the river track, were disconnected and "kicked" by the engine, so that they passed back toward their original position on the river track. Appellant's intestate, in performing his duties as a switchman, climbed upon these cars, for the purpose of stopping them when they had reached the proper location, and was seen riding on these cars. The cars were stopped with the southerly end about 20 feet north of the sidewalk along the main road, near the Third Street entrance. After the engine had kicked these cars back on this track, it coupled to the cars that were to be pushed on the middle track, northeast of the buildings, and proceeded to push these cars down said track.

The appellant's intestate had been instructed by the foreman of the crew that these cars were to be "spotted" on said track. This consisted in the placing of the cars at certain designated places, for the purpose of loading and unloading. After appellant's intestate was seen riding on the cars toward the Third Street entrance, on the river track, the engineer who was backing the cars down on the middle track heard screams, and, getting down from his engine, walked a short distance, and met appellant's intestate coming from the south. He stated that he had fallen into the vat at the corner of the cooper shop. His clothing was wet, and he was immediately taken on the engine to a hospital in Cedar Rapids, where he died within a few days.

A watchman employed at the packing plant testified that he met the appellant's intestate under the arc light located at the corner of the stable, and that he went in a southwesterly direction toward the hog-unloading dock, and then turned in a northerly direction along the highway which passes by the westerly side of the small park.

There was evidence in the record to the effect that Emerson did not know of the existence of the vat, and also evidence that other employees of the railway company engaged in switching in these grounds knew of the location of the vat, and had

passed by it. At the time of the accident, appellant's intestate was carrying a lighted lantern, which was afterward found near the vat. At the time, the vat was filled with hot water. There was evidence to show that, at different times, switchmen employed in work of the kind being done by appellant's intestate would pass from the river track to the middle track through the grounds of the packing company, and had occasionally gone through the buildings and the fence, for the purpose of performing their work more quickly. It is evident from the record that appellant's intestate, after applying the brakes to the cars that had been kicked on the river track, started to pass through the grounds of the packing company, for the purpose of spotting the cars that were being pushed in on the middle track, and in so doing, fell into the vat in question.

At the close of all of the testimony, the appellee railway company moved the court for a directed verdict, and, among other grounds, urged that the evidence, when considered with all lawful inferences which may be drawn therefrom, is insufficient to sustain a recovery in favor of the appellant. This motion challenges the sufficiency of the evidence to show any liability for negligence on the part of the appellee railway company. The undisputed evidence shows that the property upon which the plant of the Sinclair Packing Company was located belonged to said company. All of the buildings, roadways, fences, and the vat in question were constructed and owned by the Sinclair Company, and were under its exclusive management and control. The evidence also shows that many of the railway tracks on the grounds of the packing company were owned and controlled by the packing company. The railway company maintained a switch engine and crew in the city of Cedar Rapids, and these were employed to shift the cars on the grounds of the packing company, as occasion might require. The railway company delivered cars on these tracks at designated points for use of the packing company, and the switch engine and crew went upon the grounds of the packing company and withdrew cars that were loaded and ready for shipment. The railway company had no other connection, under the undisputed testimony, with the packing plant, or the premises occupied by it or the buildings and other structures thereon, than merely to deliver and receive cars on the

tracks located on said grounds. It is the contention of the appellee that, under these circumstances, the railway company, having no control over the packing company or its employees or its property, except the railway tracks, could not be liable in any way for the erection or maintenance of the vat that caused the injury to the appellant's intestate.

There is nothing whatever in the evidence to show that the railway company in any manner whatsoever had any control or domination over the premises of the packing company, except the use of the railway tracks and the necessary portion of the premises of the packing company appurtenant thereto, and required for the proper use of said tracks. The railway company, under the evidence, could in no manner have interfered with the packing company in the location or use of the vat in question. Had the railway company assumed the right to place a guard about the same, to remove the vat, to cover it up, or to withdraw the boiling water from it, it clearly would have been guilty of trespass and an unlawful interference with the property of the packing company. Under such circumstances, we are at a loss to see how the railway company could be held guilty of any negligence for which appellant can recover. There is no evidence that the appellant's intestate was required or was ordered by his superior to go from the river track to the middle track, where he was to spot the car, in the path or locality where he chose to go. There were graded and established roads, properly lighted, by which pedestrians and teams could pass from one part of the grounds of the packing company to another. The appellant's intestate was on such road, near an arc light; and, without any direction so to do, and apparently wholly of his own accord, left the established track, and, in attempting to cross the grounds of the packing company, went to an unlighted place at the end of the cooper shop, and in so doing, fell into the vat.

It is elementary that there can be no negligence unless there is a duty which has been violated. *Eakins v. Chicago, R. I: & P. R. Co.,* 126 Iowa 324; *Upp v. Darner,* 150 Iowa 403. What duty did the railway company owe to its employee that was violated in this instance? It is true that the superintendent of the railway company testified that he had known for many

years of the existence of this tank; that switchmen employed by
the railway company testified that they had frequently passed
by this vat, in going from their work at one point of the rail-
way tracks to another.   This action is against the railway com-
pany, and not against the Sinclair Packing Company.   The lat-
ter might be liable for negligence if it were charged with knowl-
edge that the employees of the railway company were in the
habit of passing by this vat in the performance of their work.

The question of the liability of the packing company for
negligence to a licensee is not involved in this case.   The railway
company cannot be held liable for negligence by permitting the
existence of this vat on the property of the packing company,
over which it had no control, even though it knew that its em-
ployees were in the habit of crossing the property of the packing
company, to get from one railway track to another.   The duty
which an employer owes its employee, to provide a safe place in
which to work, has no application to the facts in this case.   There
was nothing about the employment that required the appellant's
intestate to go upon this part of the grounds of the packing
company to perform his duties, or that required him in any man-
ner to leave the established roadways, if he desired to cross the
grounds of the packing company in doing his work.   The rail-
way company neither erected, maintained, controlled, nor in any
manner exercised any jurisdiction whatever over the property
of the packing company, except the railway tracks and the
premises adjacent thereto, reasonably necessary for the use of
the railway company in its business of switching cars on the
tracks.

If, in passing from the river track to the middle track, in-
stead of going around the end of the cooper shop, the appellant's
intestate had taken the shorter course, by going through the
building, and in so doing had been injured, by coming in contact
with the machinery of the packing company, could it be said
that the railway company was guilty of negligence?   If, in
passing from the river track to spot the cars on the middle track,
the appellant's intestate had taken a "short cut," and gone
through the stables of the packing company, and had been kicked
by a vicious horse, could it be said that the railway company was
guilty of negligence?   If not, then how can it be said that the

railway company was guilty of negligence because the packing company maintained this open vat on its ground, where it did, which caused the injury to the appellant's intestate?

This action is brought under the Employers' Liability Act, 35 Statutes at Large, Chapter 149, which provides for recovery from injury or death "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, tracks, roadbed, works, boats, wharves or other equipment."

Under this act, the appellee is to be held liable, if at all, for some act of negligence in the particulars enumerated in the statute. It is liable only for negligence in the respects designated.

Under the evidence in this case, there is a failure of proof that the railway company failed to exercise the care and prudence required of an employer under this statute, in respect to any matter included in said act.

The court was right in sustaining the appellee's motion for a directed verdict, on the ground that there was no cause of action shown against the appellee railway company.

In view of our holdings on this question, it is unnecessary for us to discuss other propositions argued by the appellant.

The action of the lower court in directing a verdict in behalf of the appellee was correct, and the judgment appealed from is —*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.